79 So.2d 670 (1955)
Frederick W. PLATT, Appellant,
v.
J.G. DREKA, also known as J. Godfred Dreka, Appellee.
Hilda Thelma PLATT, Appellant,
v.
J.G. Dreka, also known as J. Godfred Dreka, Appellee.
Freddie Joy PLATT, a minor, by her father and next friend, Frederick W. Platt, Appellant.
v.
J.G. DREKA, also known as J. Godfred Dreka, Appellee.
Supreme Court of Florida. Division B.
April 6, 1955.
Rehearing Denied May 9, 1955.
*671 Farish & Farish, West Palm Beach, and Virgil L. Milbrath, Ocala, for appellant.
Boggs, Blalock & Holbrook, Jacksonville, for appellee.
THOMAS, Justice.
Inasmuch as the parties litigant have stipulated that the three actions grew out of the same motorcar collision and that the pleadings, affidavits and exhibits in all are identical, except certain variations in the complaints not material to the questions of law now presented, we will treat the appeals as one, referring to the appellants in the singular.
The appellant sought damages for injuries alleged to have been suffered as a result of the negligent operation of a vehicle owned by the appellee. The determining factor in the case, brought into focus by the positive allegation in the complaint and the specific denial in the answer, was the ownership of the car on 23 November 1950, the date of the mishap. We go now to the facts the trial judge considered and on which he based his decision, in effect, that the appellee did not own the vehicle at the time of the collision and that the appellant could not, therefore, prevail.
There is no doubt that the car involved in the collision was the property of the appellee on 3 February 1950 when it was stolen by an escaped convict who wrecked the car and killed himself in the process. Appellee filed a claim with his insurance carrier which was settled on the basis that the property was a total loss, and the appellee then delivered to the insurance company, in consideration of the sum paid, a bill of sale granting, bargaining and selling all his right, title and interest in the remains of the vehicle. These instruments were signed the same day, 10 February 1950. On 1 March 1950 the appellee executed a power of attorney to one J.T. Kaylor authorizing him to transfer the title and the same day the attorney in fact attempted to convey the title by executing "FORM NO. 1" on the back of the title certificate, but the name of the transferee was omitted; also the power of attorney authorizing Kaylor so to act for the appellee was not acknowledged until 11 December 1950, the month following the collision. It is next noted on the title certificate under the caption "REASSIGNMENT BY LICENSED DEALER" that the insurance company had purchased the car from the owner who signed the preceding form, and that the former had sold the car, but here again the name of the vendee was not inserted. This is followed by "FORM NO. 2" signed with the name Philip Johnson "by R.F. Farmer" containing the statements that Johnson had bought the car and that he was thereby applying for a certificate of title. This application was dated 12 December 1950.
So far we have described the transfers, or attempted transfers, as they are reflected by the records in the office of the Motor Vehicle Commissioner, with the exception of the bill of sale from appellee to the insurance company. Aside from these it appears that the insurance company by bill of sale transferred title to the car to one Archie V. Bagley, 1 March 1950. It is not *672 clear how title passed to Johnson who, as we have commented, applied for the certificate the month after the collision. It was Johnson who was charged with negligence in the operation of the car said to have been owned by appellant.
By referring to Sec. 51.12, Florida Statutes 1951, and F.S.A., we find that a plaintiff need aver, so far as the identity of the owner of a damaging car is concerned, only the names of the operator and owner, and that a presumption then arises that the owner is responsible for the negligence of the driver, which presumption places upon the owner the burden of proving that the car was not being driven with his consent. In the present case appellee pleaded that he did not own the car and that Johnson was not driving with his permission. Of course, if ownership is not established there is no need to explore the matter of consent.
It is obvious that there is no record in the office of the Motor Vehicle Commissioner establishing an effective transfer of the title by the original owner, appellee, or to the ultimate owner, Johnson.
Appellant has cited authority from other jurisdictions that one in appellee's situation should be held accountable for the damage done. There is logic on appellant's side, too, because the appellee could have controlled the transfer in the first instance by simply signing, himself, the instrument provided on the back of his title certificate after placing in it the name of the transferee, or by acknowledging his power of attorney so that his attorney in fact would have been authorized to act in that way for him, or by giving to the Motor Vehicle Commissioner the notice prescribed in Sec. 319.22(2) (b), Florida Statutes 1951, and F.S.A. But we think there is no occasion to resort to decisions of the courts of other states because we consider that this case is ruled by the decision of this Court in Ragg v. Hurd, Fla., 60 So.2d 673. In the cited case ownership of the offending vehicle seems to have been established in the used-car dealers who, through an agent, had permitted a prospective purchaser to test the car. This Court decided that the jury had a right to find the dealers liable because no title had passed to the purchaser, but the Court expressly held that Chapter 319, Florida Statutes 1951, and F.S.A., did not provide an exclusive method of transferring title and the Court's conclusion of the controversy was based, so it was said, on the common law rules, relative to sales, which had not been abrogated by the statute.
When the facts in the instant case are gauged by that decision there is good reason to affirm the judgment, for the appellee by a bill of sale to the insurance company divested himself of title as well as possession many months before the injury to the appellant.
Against these considerations is the appellant's claim that the appellee should be held liable for the misdeed of Philip Johnson, whom appellee did not even know, committed nine months after the wreck, because the record in the Motor Vehicle Commissioner's office did not show a regular transfer of title by appellee, although it did reveal an apparent transfer by the owner and reassignment by a dealer eight months beforehand.
The whole matter may be resolved into this question: Is the one in whom title reposes, according to the record in the Commissioner's office, an "owner" subject to civil liability for damage that may thereafter be caused by the vehicle simply because later attempted transfers, reflected in the Commissioner's records, were faulty despite the bona fide sale and delivery by that owner? We think that in view of the cited case the answer must be negative.
The judgment is
Affirmed.
MATHEWS, C.J., and HOBSON and DREW, JJ., concur.