81 So.2d 635 (1955)
O.L. PALMER, Jr., by his next friend, O.L. Palmer, Sr., Appellant,
v.
R.S. EVANS, JACKSONVILLE, Inc., a corporation, Appellee.
Supreme Court of Florida, Division B.
July 8, 1955.
Rehearing Denied July 27, 1955.
John L. Nixon and M.W. Goldstein, Jacksonville, for appellant.
Osborne, Copp & Markham, Jacksonville, for appellee.
HOBSON, Justice.
One Hughes, who is not a party to this appeal, drove a car out of the used car lot of R.S. Evans, Jacksonville, Inc., and approximately twenty minutes thereafter struck a motorcycle upon which plaintiff-appellant was riding. Plaintiff sued both Hughes and R.S. Evans for negligence. The sales contract under which Hughes was purchasing the car from Evans was not fully executed until the day after the accident occurred. Evans brought a separate *636 chancery suit seeking reformation of the contract to show that the sale took place before the accident, and that Hughes was then the owner of the car. On certiorari, we held that the separate chancery suit should be dismissed and that the issue of ownership could be submitted to the jury in the damage suit. See Palmer v. R.S. Evans, Jacksonville, Inc., Fla., 69 So.2d 342.
The damage suit has now been tried and the jury found for plaintiff against Hughes but not against R.S. Evans. It is contended here that the disposition of the issue of ownership below was error, mainly because of the trial court's refusal to charge that if the jury found F.S. § 319.22, F.S.A. (pertaining to endorsement and delivery of title certificate) had not been complied with by Evans it must find that the car was owned by Evans when the accident occurred.
It is evident from a reading of Section 319.22 in its entirety that the primary emphasis intended by this section is upon the marketability of title to a vehicle. Appellant contends, however, that one who has not complied with the provisions of this section has not succeeded in divesting himself of ownership of the vehicle, with the result that tort liability growing out of such interest may successfully be asserted against him. The source of this contention is to be found in F.S.A. § 319.22(2) which provides that an owner who has sold and delivered a vehicle to a purchaser "shall not by reason of any of the provisions of this law, be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another" when the owner has fulfilled either of two specified requirements pertaining to endorsement and delivery of the title certificate, which appellant contends R.S. Evans has not complied with.
The provisions of this section have been construed in Ragg v. Hurd, Fla., 60 So.2d 673, Rutherford v. Allen Parker Co., Fla., 67 So.2d 763, and Platt v. Dreka, Fla., 79 So.2d 670, opinion filed April 6, 1955. In the Ragg and Platt cases, supra, this court was careful to point out that Chapter 319, Florida Statutes, did not provide an exclusive method of transferring title nor abrogate the common law of sales. By putting these decisions together, the true import of Section 319.22(2) as it affects the possible tort liability of the seller of an automobile is brought into focus. While it is clear that under this section no civil liability can accrue to a seller who has complied with the title certificate requirements, it does not necessarily follow that a seller who does not comply with these requirements is ipso facto liable. This is true because the common law of sales is available to test the liability of a non-complying seller. We therefore turn to examine the evidence which was submitted upon the issue of ownership, to determine whether under the common law the jury was authorized to return a verdict exonerating R.S. Evans.
It appears without contradiction that on August 16, 1952, two days before the accident, Hughes selected the car for purchase from R.S. Evans at an agreed price of $1030, paid $50 as a partial down payment, signed an order for the car, and signed a purchaser's statement for the purpose of obtaining credit. Hughes returned to the Evans lot on August 18, 1952, the date of the accident, and paid an Evans salesman $300, the remainder of the down payment. Hughes also signed a conditional sales contract and a power of attorney in blank, whereupon possession of the automobile was delivered to him and he drove it away and was thereafter involved in the accident. Both Hughes and the Evans salesman considered the deal closed at the time possession of the automobile was delivered, although the Evans bookkeeper did not date the conditional sales contract until August 19th and did not fill out the certificate of title application until August 21st.
We think these facts supported the verdict rendered. Before Hughes drove the car out of the Evans lot, the definite intention existed on the part of Hughes and the Evans representative to make immediate transfer of the beneficial ownership of the vehicle to Hughes, and nothing appears to suggest a contrary intention. This intention *637 of the parties, coupled with actual delivery of the goods and the tender and acceptance of the down payment, leaves us with no doubt that the sale had been completed, for the purposes of this case, before the accident occurred. Fletcher Motor Sales, Inc., v. Cooney, 158 Fla. 223, 27 So.2d 289. And see 46 Am.Jur., Sales, Sections 413 and 433. The case is to be distinguished from Ragg v. Hurd, supra, 60 So.2d 673, wherein no money had been paid by the buyer, no financing arrangements had been made, and the buyer had in no sense complied with the contract of sale, if any there was.
In the case at bar, the parties intended to enter, did enter, and ultimately memorialized in writing, a conditional sales contract, in which title was retained by the seller until the completion of payment. Thus legal title to the automobile remained in the seller, R.S. Evans, at the time the accident occurred. But the rationale of our cases which impose tort liability upon the owner of an automobile operated by another, e.g., Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, Boggs v. Butler, 129 Fla. 324, 176 So. 174, Holstun v. Embry, 124 Fla. 554, 169 So. 400, and Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, would not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. In such a title-holder, the authority over the use of the vehicle which reposes in the beneficial owner is absent. Probably because of this fact, the term "owner" is defined in F.S. § 317.74 (20), F.S.A., to mean only the conditional vendee, in the case of a vehicle which is the subject of an ordinary agreement for conditional sale. Moreover, in jurisdictions having statutes making the owner liable for the negligence of another driving his car with his consent, the term "owner" has been universally construed to eliminate those who hold nothing more than naked legal title. See Craddock v. Bickelhaupt, 227 Iowa 202, 288 N.W. 109, 135 A.L.R. 474, and the cases cited in annotation, 135 A.L.R. 481, 485-486. It is therefore apparent that it was necessary for appellee in the case before us to prove only that the beneficial ownership had passed to Hughes before the accident occurred and, as we have indicated above, the proof was adequate upon this point.
As for the contention of appellant that the parol evidence rule prevents appellee from showing that the contract was in fact entered prior to the accident, it was long ago held that such rule applies only as to parties to the contract or their privies, and not to a stranger thereto. Roof v. Chattanooga Wood Split Pulley Co., 36 Fla. 284, 18 So. 597.
Affirmed.
DREW, C.J., and THOMAS and THORNAL, JJ., concur.