ADKINS, Justice.
By petition for writ of certiorari, we are asked to review the memorandum decision of the District Court of Appeal, Second District, reported at 237 So.2d 616 (Fla.App.2d 1970), which affirmed the summary judgment entered by the trial court in this automobile injury case. Conflict is assigned with the decisions of this Court in Ragg et al. v. Hurd, 60 So.2d 673 (Fla.1952), and the District Court of Appeal, First District, in North Florida Motor Co. v. Pembleton, 225 So.2d 349 (Fla.App.1st, 1969), pursuant to Fla. Const. art. V, § 4(2), F.S.A. and F.A.R. 4.5 subd. c(6), 32 F.S.A. We have jurisdiction.
The question presented is whether the District Court erred in affirming the trial court, which entered a summary judgment on grounds there was no genuine issue of any material fact and that as a matter of law the defendant, Bill Currie Ford, Inc., was entitled to judgment against the plaintiff, Maria Escobar, and relying on the decision of the District Court of Appeal, First District, in Cox Motor Co. v. Faber, 113 So.2d 771 (Fla.App.1st, 1959).
In her petition to this Court, the plaintiff contends that the trial judge erred in concluding there is no genuine issue of any material fact, and that the question of beneficial or equitable ownership of the automobile involved in this case should have been submitted to the jury for determination.
The persons involved in this case are Maria Escobar, the plaintiff, petitioner herein, who suffered injury; Bill Currie Ford, Inc., the defendant, respondent herein, which was selling the automobile which inflicted injury upon the plaintiff; and Jo *313 seph B. Higgins, who was buying the automobile from the defendant.
The facts of this case are as follows: On October 14, 1967, a Saturday, in the early afternoon, Higgins went to defendant’s used car agency, where he entered into an agreement to trade in his older car on a 1965 Thunderbird. Possession of the two cars was exchanged, Higgins taking the Thunderbird. The older car was financed, and Higgins could not sign a clear title. The newer car required financing for Higgins, which could not be obtained until the Monday following the transaction. The parties agreed to complete the necessary papers on Monday. Higgins at the time of the agreement signed a retail sales contract for the newer automobile, and signed two power of attorney forms in blank, which were not notarized at the time he signed them; a credit statement may have been taken by the dealer. Higgins took possession of the Thunderbird. That evening, the Thunderbird, driven by a third party with Higgins as a passenger, collided with a bus on which Maria Esco-bar was a passenger, resulting in injuries to her. She commenced suit against the defendant dealer on the theory the defendant was owner of the automobile at the time of the accident.
The decision on which the trial judge relied, Cox Motor Co. v. Faber, supra, resulted in reversal by the District Court of the trial court’s directed verdict in plaintiff’s favor. The plaintiff was not a party to the automobile purchase transaction and the issue in that case was ownership of the automobile involved. The facts were that the buyer took possession of the automobile on January 8, 1957 and the accident occurred February 7, 1957. The purchase transaction was approved by the dealer one day after delivery to the buyer, a down payment was made, installment financing was arranged, and several days later a further installment was paid by the buyer toward the purchase price. It was found by the trial judge that satisfactory payment by cash or a financing agreement had not been completed. The trial court found that ownership was still in the dealer at the time of the accident, because legal and beneficial ownership had not been transferred to the buyer. The District Court reversed, stating:
“The question naturally arising is as to the beneficial ownership of the automobile at the time of the accident. The general governing rule is that naked legal title does not determine ownership in considering tort liability but such ownership is determined by the party having a beneficial interest with control and authority over the use thereof. * * * Whether or not such ownership actually passed depends upon a determination of the legal rights under the agreement to purchase between the defendant and purchaser. * * * This was an ordinary automobile contract to purchase subject to the conditions delineating the rights of the respective parties. Where there are no apparent ambiguities in the contract the interpretation of such contract is a question of law for the court.” (page 773)
The Court noted that the sales contract provided that no right, title or interest should pass until a satisfactory payment plan was executed, which had not been done. However, this was held to be a reservation of legal title only.
As may be noted, the facts in Cox Motor Co. v. Faber, supra, differ from those in the case sub judice, in that the dealer in the case sub judice had not approved the transaction, and the written sales agreements had not been completed, nor had financing been arranged; these facts suggest that title had not passed. On the other hand, the buyer had possession of the car, and had surrendered his old car as part payment.
In Ragg v. Hurd, supra, the possessor of the car took possession on Sunday to try it out, then advised the dealer he would buy it; the dealer agreed to sell it and told the prospective buyer to come in and pay for *314 it. The buyer did not return the car, nor did he come in and arrange payment. The dealer instructed its salesman to go out and get the car or payment for it. Before this was done, the buyer collided with a third party. This Court held that title had not passed, and that a jury could so find, noting that the record disclosed an intention on the part of the dealer to retain title until payment was made.
In North Florida Motor Co. v. Pembleton, supra, the facts were that the buyers and seller had agreed on terms of sale, and the buyers gave their old car in trade and gave a check for the remainder of the down payment, cautioning the dealer not to cash the check until it was determined that satisfactory financing could be arranged. The buyers signed the forms necessary to transfer title and to procure tags. Possession of the vehicle was turned over to the purchasers, after they had started to depart the premises in their old car and the dealer’s salesman suggested they drive the new one. The record does not disclose the lapse of time between taking of possession and the accident giving rise to the litigation. The District Court affirmed the jury verdict for the injured plaintiff, relying on Ragg v. Hurd, supra, concluding that it was reasonable to find that payment had not been made, and therefore that the purchasers had not yet acquired equitable or beneficial title to the car to sustain tort liability.
The defendant dealer seeks support in this Court from the decisions in Palmer v. R. S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla.1955), and Williams v. Davidson, 179 So.2d 387 (Fla.App.1st, 1955). Palmer v. Evans, supra, does not support defendant’s summary judgment, since in a prior decision in the same case, 69 So.2d 342 (Fla.1954), this Court held that the question of ownership was proper for submission to the jury, and not for decision by the judge in a separate chancery action. The facts were that Palmer was struck by a vehicle driven by one Hughes. Hughes had paid a deposit on the down payment, signed an order for the car and completed a credit financing form. . He returned two days later and paid the balance of the down payment; twenty minutes after leaving the dealer’s lot he struck the plaintiff. The jury found ownership was in Hughes, not the dealer, and this Court affirmed in the second Palmer v. Evans’ decision. In Williams v. Davidson, supra, the District Court of Appeal, First District, affirmed the summary judgment entered by the trial judge in favor of the defendant dealer. The facts were that the car purchaser turned in his old car as down payment, paid for tag and title, and took possession. The transaction occurred on Saturday afternoon, the banks being closed. Davidson
“stated that he would pay the $500 cash difference to Fields Motors when the banks opened on the following Monday * * *.” (Page 388)
The facts differ from those at Bar in that in Davidson, the contract was closed, except that Davidson was to pay the remainder of the purchase price in cash two days later. No contingency relating to financing or payment for the car was present, and Davidson returned the following Monday and paid the difference, not mentioning that he had had an accident involving the plaintiff in the interim. On these facts, the District Court was correct in affirming the summary judgment entered by the trial judge.
In the case sub judice, examination of the record, including the deposition of Higgins and those of other parties, reveals considerable conflict as to the circumstances, statements and agreements made at the time Higgins was transacting for the 1965 vehicle. It is the testimony of Higgins, supported by depositions of persons who accompanied him to the dealer’s premises, that he did not consider himself owner of the automobile, even beneficially, and that he could not purchase it until his financing was approved by his bank and this was uncertain. Evidence in depositions and affidavits for the dealer, on the other hand, *315 suggests that payment arrangements were firm, to be in cash based on financing already approved, and that the sale was complete. It is of interest that the briefs filed by the plaintiff, the defendant, and Tampa Transit Lines, Inc., as amicus curiae, present different and inconsistent versions of the transaction facts, which demonstrates that conflicts in evidence exist in this case suitable for consideration by a jury.
We conclude there *is a genuine issue of material fact as to whether beneficial or equitable ownership vested in Higgins or whether ownership for tort liability purposes remained in the dealer. Therefore, it was error on the part of the trial judge to enter a summary judgment for defendant.
The summary procedure is authorized by R.C.P. 1.510, 31 F.S.A., and upon proper motion judgment
“shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” R.C.P. 1.510(c).
If there is a genuine issue as to a material fact, the case should be submitted to the jury, Fouts v. Household Finance Corp., 75 So.2d 772 (Fla.1954). The summary judgment procedure is limited else the opposing party loses his constitutional right to trial. Navison v. Winn and Lovett Tampa, Inc., 92 So.2d 531 (Fla.1957); Holl v. Talcott, 191 So.2d 40 (Fla.1966). The burden of proving the nonexistence of a material fact is on the moving party, Holl v. Talcott, supra. Doubts are to be resolved against granting summary judgment, and judgment should not be granted unless evidence is either too incredible to believe or is without probative value even if true. Johnson v. Studstill, 71 So.2d 251 (Fla.1954). The party moving for summary judgment must disprove all contrary evidence including all reasonable inferences which may be drawn in favor of the opposing party; judgment should be granted only when it is shown that the opposing party cannot offer proof to support his position. Holl v. Talcott, supra.
For the reasons herein stated, the decision of the District Court of Appeal is quashed. This cause is remanded to the District Court, to be further remanded to the trial court for further proceedings consistent with this opinion.
It is so ordered.
CARLTON, BOYD and DREW (Retired), JJ., concur.
ERVIN, J., dissents with opinion.
ROBERTS, C. J., and SAMUEL SMITH, Circuit Judge, concur with ERVIN, J.