620 So.2d 250 (1993)
PALM BEACH AUTO BROKERS, INC., Appellant,
v.
Mary Lou DeCARLO, Appellee.
No. 91-3095.
District Court of Appeal of Florida, Fourth District.
June 23, 1993.
*251 Frank A. Kreidler, Lake Worth, for appellant.
Cynthia A. Rudy and David C. Wiitala of McManus Wiitala & Contole, P.A., North Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
In a non-jury trial the court determined adversely to appellant the only issue before the court, i.e., whether appellant, a used car dealer, remained the beneficial owner of a vehicle which it had sold and delivered to Ronald Freer who, eight days later, negligently operated the vehicle and caused serious personal injuries to appellee, Mary Lou DeCarlo. We reverse.
The essential evidentiary facts are without material dispute and can be summarized briefly. On August 8, 1985, one Ronald Freer came to appellant's used car lot and agreed to purchase a 1974 Cadillac priced at $1,153, including taxes and fees. He made a $300 deposit. The following day he returned, paid an additional $100 cash, and executed a security agreement/retail installment contract to secure the payment of the remaining $753, payable in 21 weekly installments of $35 and a final payment of $18. At the same time, he also signed the purchase contract, a credit application, an "as-is" warranty statement, an odometer statement, an application for temporary registration, and an insurance affidavit. Most importantly, he then took delivery and physical possession of the Cadillac and drove from appellant's lot.
On August 16, Freer returned to appellant's place of business and made his first weekly payment of $35. The next day after Freer had done some work on the car, he took it out for a test during which he negligently collided with Mrs. DeCarlo's car causing her serious personal injuries.
At the time of the collision appellant had not taken the necessary steps to transfer the legal title to the automobile under section 319.22(2) Florida Statutes (1985), and did not do so until September 12, 1985. However, appellant paid the state sales tax on this sale (as well as all other sales during the month) at the end of August, as *252 was its custom. Appellant's principal, Mr. Robinson, testified without contradiction that appellant did not rent or lease cars, was in business solely to sell cars and that appellant intended the transaction as a sale in accordance with the clear and definite terms of the sales contract. Although the security agreement/retail installment contract gave appellant the right to repossess the automobile at any time the buyer was in default of a payment, all payments were current at the time of the collision.
The court's final judgment contains no factual findings, but in essence states only "that the Court determines as a matter of law that on August 17, 1985 [appellant] owned or exercised such dominion and control over the [Cadillac] that the court finds [appellant] was the owner of such vehicle." While it is true that on August 17 appellant held the naked legal title to the vehicle, there is no evidence from which the court reasonably could infer that on August 17 appellant exercised dominion and control over the Cadillac. As for appellant holding the naked legal title, Florida law is clear that the tort liability imposed on the owner of an automobile operated by another does not extend to one who holds mere naked legal title as security for payment of the purchase price, Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955); Williams v. Davidson, 179 So.2d 387 (Fla. 1st DCA 1965), and that it is the beneficial ownership which carries with it liability for damages which arise from the automobiles negligent operation. Wummer v. Lowary, 441 So.2d 1151 (Fla. 4th DCA 1983).
It is apparent from the trial court's comments that it viewed appellant's failure to timely transfer the title as indicative that appellant did not intend a sale. Appellee argues that this was a factual finding upon which the court based its judgment, and because such factual finding is supported in the record by competent, substantial evidence, it becomes unassailable on appeal. Aside from the court's comments concerning its own experience as a trial court judge,[1] we find nothing in the record from which the court reasonably could infer that appellant's failure to timely transfer the title made this transaction something other than that which both appellant and Freer described it to be, to wit: a bonafide sale of the Cadillac.
The supreme court has made it clear in a number of cases, see, e.g., Palmer, that while compliance with the requirements of section 319.22(2), Florida Statutes (1985), will protect the seller of the motor vehicle from tort liability for the negligent operation of the vehicle by one having the beneficial interest with control and authority over the use of the vehicle, the common law of sales is available to test the liability of a non-complying seller. That law is now codified in the Uniform Commercial Code, and applicable to this sale is section 672.401(2), Florida Statutes (1985), which provides:
Unless otherwise explicitly agreed title passes to the buyer at the time and place at which seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place... .
The contract between appellant and Freer contains no explicit agreement that title would pass at a time and place other than at the time and place at which appellant completed his performance with reference to the physical delivery of the vehicle. There was simply no basis either in law or fact for the court to conclude that appellant's failure to timely arrange for transfer *253 of the title certificate evinced an intent on appellant's part that the transaction was not a sale.
REVERSED.
GLICKSTEIN, C.J., and DELL, J., concur.
NOTES
[1] The trial court commented during counsel's argument that from his experience as a trial court judge he had observed that used car dealers frequently delayed the formal transfer of legal title in anticipation of early repossession. It was a practice, he observed, which allowed the dealers "to simplify their lives," that is, if and when the vehicle was repossessed and placed again on the lot for sale, the dealer still had the title certificate in its name. The court further observed that while such was a way of doing business, "if you live by the sword you die by the sword." The court's observations as a trial court judge are not competent evidence upon which to make a factual finding, but if they were, the inferences reasonably to be drawn relate more to enforcement of the security interest than to intent to sell.