ALTENBERND, Judge.
James and Marilyn Roberts sued Auto Plan, Inc., concerning an automobile accident on December 6, 1990, in which Mr. Roberts and the couple’s son allegedly sustained permanent injuries. Their car was struck by an uninsured van, which Auto Plan had recently sold to Steven and Mabel Stewart. The plaintiffs’ complaint alleged that the sale was not a bona fide sale and that Auto Plan should be legally responsible for the use of the vehicle under the dangerous instrumentality doctrine. The trial court granted summary judgment in favor of Auto Plan on the basis that beneficial ownership to the used car had transferred to the Stewarts by the time of the accident. See Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla.1955); Cox Motor Co. v. Faber, 113 So.2d 771 (Fla. 1st DCA 1959); Palm Beach Auto Brokers v. DeCarlo, 620 So.2d 250 (Fla. 4th DCA 1993). We reverse and remand for further proceedings because factual issues remain concerning Auto Plan’s potential liability for the operation of this used vehicle.
*643 The record in support of summary judgment is very limited. There are no depositions nor any affidavits from Mr. and Mrs. Stewart. The only evidence concerning the sale of the used van and the transfer of title is the affidavit of James R. Apple, the president of Auto Plan. That affidavit does not sufficiently resolve all of the issues and attaches documents that are not entirely consistent.
From these documents attached to the affidavit, it appears that Mr. and Mrs. Stewart purchased a 1978 Ford Econovan from Auto Plan on November 8, 1990. Auto Plan sold the extensively used vehicle “as-is,” with a clear disclosure that the vehicle was sold without liability insurance. Mr. and Mrs. Stewart signed a sworn application for certificate of title in which they represented that the used van would not be operated on the streets and highways of Florida. This application was apparently filled out and notarized by Catherine E. Spatz, a representative of the dealership. Such an application for title does not require a current motor vehicle registration in order to obtain a certificate of title. Section 319.23(7), Fla.Stat. (1991). This may be significant because the application for registration requires proof of insurance. Section 320.02, Fla.Stat. (1991).
Oddly, Auto Plan, as an “issuing agency” for the Department of Highway Safety and Motor Vehicles, issued a temporary tag to the Stewarts on the same day it notarized the application for a non-use certificate of title. The temporary tag was still valid on December 6, the day of this accident. The Stewarts made several weekly payments on this used van before the accident. From this record, it appears that Auto Plan released this motor vehicle to the Stewarts knowing that it would be used on the highway while helping the Stewarts to apply for a non-use registration. There would be a question concerning the lawfulness of this transaction if it occurred in the manner that our record suggests. See §§ 319.33(l)(e), 320.131, Fla.Stat. (1991).
Of equal interest, Mr. Apple’s affidavit attaches “affidavits” from Mr. and Mrs. Stewart, stating that they have personal injury protection and property damage insurance with Great Oaks Insurance Company. These “affidavits” are not notarized or dated. Mr. Apple’s affidavit does not state when these documents were prepared.
The plaintiffs alleged in their complaint that Auto Plan had improperly prepared an application for a non-use certificate of title and improperly issued a temporary tag. They alleged that Auto Plan had intentionally failed to process the application for a change of title and that the transaction was not a bona fide sale. They maintain that Auto Plan did not submit the documents to transfer title of the vehicle until January 1991, when it became aware of the accident. By that time, Auto Plan had allegedly repossessed the vehicle. The plaintiffs argue that these actions should prevent beneficial ownership of the vehicle from passing to the Stewarts for at least the thirty-day period of the initial temporary tag. They urge this court to extend the dangerous instrumentality doctrine to the used car dealership under these circumstances.
Neither party has cited Horne v. Vic Potamkin Chevrolet, 533 So.2d 261 (Fla. 1988), which holds that a car dealership owes no duty to the public to evaluate the driving skills of a purchaser. Once a bona fide sale has occurred, the dealership is not liable under the dangerous instrumentality doctrine for the operation of the car, even if a reasonable salesperson would have known that the purchaser was incompetent to drive. The Home case relies extensively on section 319.-22(2), Florida Statutes (1991), which relieves a seller of liability under chapter 319 after a bona fide transfer of a motor vehicle.
While some of the policies discussed in Home are relevant to this case, they are not necessarily dispositive. The plaintiffs may be able to establish that this transaction was not a bona fide transfer. See Sullivan v. Skeie Pontiac, 270 N.W.2d 814 (Iowa 1978) (dealership that fails to obtain safety inspection required by statute remains liable for vehicle after transfer because transfer is not bona fide sale). If the plaintiffs’ allegations are true, Auto Plan’s acts are intentional, not negligent, to the extent that it may have willfully arranged for the Stewarts to use a dangerous instrumentality on Florida’s high *644 ways in violation of this state’s title laws. Home does not appear to control this narrow set of circumstances.
Likewise, it is arguable that the dangerous instrumentality doctrine should apply to a dealership that knowingly issues a temporary tag for a vehicle that has a pending request for a non-use title. See, e.g., Reese v. Reamore, 292 N.Y. 292, 55 N.E.2d 35 (1944) (dealership that intentionally violates statutes regulating dealership plates is estopped to deny responsibility for vehicles illegally using those plates). A dealership issues a temporary tag under chapter 320. The language in section 319.22(2) does not seem to eliminate any duty that may be created by section 320.131 for a dealership that issues temporary tags. On the other hand, the Stewarts did not need to purchase bodily injury liability insurance to obtain a registration. It may not be appropriate to use the dangerous instrumentality doctrine to transform Auto Plan into a liability insurer for this van when the statutory violation did not affect liability insurance. See § 320.131(3), Fla.Stat. (1991).
At this time, we decline to announce any rule of law concerning the potential liability of a car dealership under these circumstances. Auto Plan did not argue that the complaint failed to state any cause of action as a matter of law. If, in fact, the dealership has committed unlawful or even criminal acts in this case, the plaintiffs may convince the trial court that Auto Plan should be responsible under the dangerous instrumentality doctrine for this used van at the time of the accident. At this stage, however, this court does not know all of the relevant facts concerning this transaction. The trial court has not fully considered the nature of the plaintiffs’ cause of action against Auto Plan. Before we announce a rule that expressly recognizes a cause of action affecting many dealerships, it seems prudent to wait for a more complete record.
Reversed and remanded.
RYDER, A.C.J., and DANAHY, J., concur.