98 So.2d 738 (1957)
Lee Y. McAFEE, Appellant,
v.
W.B. KILLINGSWORTH, Appellee.
Supreme Court of Florida.
November 22, 1957.
Rehearing Denied December 18, 1957.
Kelner & Lewis, Miami, for appellant.
*739 Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellee.
O'CONNELL, Justice.
Lee Y. McAfee, appellant, filed his complaint charging defendants, William C. Lowery and W.B. Killingsworth, with responsibility for injuries he sustained in an automobile accident. Plaintiff McAfee, during the trial, took a voluntary non-suit against Lowery, the driver of the vehicle which collided with plaintiff's. Defendant Killingsworth, hereafter referred to as defendant, was alleged to be vicariously liable as the consenting owner of the automobile.
Lowery denied liability and defendant alleged he was not the owner of the automobile, having sold it to Lowery prior to the accident. The case went to trial before a jury and at the close of all the evidence the jury was instructed that Lowery's negligence had been proved by a preponderance of the evidence and that defendant's liability was dependent upon whether he owned the car at the time of the accident. The jury returned a verdict for the defendant, whereupon the plaintiff entered this appeal.
The effect of the jury's verdict was a finding that defendant had sold the automobile prior to the accident to Lowery. On appeal the question is whether there was sufficient evidence before the jury to support such a verdict.
Defendant owned the subject vehicle prior to the accident. In July, 1954 he went on his vacation after leaving the car with one Ragland, operator of a filling station. He informed Ragland he wanted to sell it for $450 or $500. Defendant did not give Ragland any title papers to the car. While defendant was away several people took the car out to determine whether they were interested in purchasing it. Lowery took it out for a period of several hours one day. On another day he returned, gave Ragland $200 and took the car. Ragland testified he told Lowery defendant was out of town and would contact Lowery when he returned.
Defendant returned on July 10, 1954. The date Lowery took the car is not known with certainty but apparently was prior to July 10th, because when defendant returned to town on that date Ragland gave him the $200 and told him to contact Lowery. However, defendant had not yet contacted Lowery on the morning of the accident.
Early on the morning of July 14, 1954 Lowery, driving the subject vehicle, collided with the plaintiff's automobile. During that day defendant was called by Lowery's cousin and was requested to obtain the release of the vehicle from the city pound, where it had been towed. Defendant took with him his title papers and arranged for the release of the vehicle to the cousin. The next day he met Lowery's cousin at the Motor Vehicle Registration office, received $300 as the balance due on the car and executed the title certificate to Lowery.
Lowery testified that he gave Ragland the $200 merely as a deposit rather than a down payment. He said that although he had had the car for several days before the accident he had not yet decided to purchase it but was still trying it out. Ragland testified that no other prospective buyer had given a deposit before taking the car out on trial. Lowery stated he paid the balance of the purchase price after the accident because he felt obligated to buy the car after having damaged it.
Defendant testified that he intended to retain paper title to the car until paid in full, but that he left the car to be sold and as far as he was concerned the car became Lowery's upon his making the $200 down payment.
It is the opinion of this Court that there was sufficient evidence to establish for the jury that there was an intent on the part of the parties to this transaction for the sale to be effective when Lowery took the *740 car the second time, after making the $200 partial payment. The jury could and apparently did discredit Lowery's testimony that he was still undecided at the time of the accident whether to keep the car, since he had had the car for several days and had paid over to Ragland the $200.
This Court has previously established the common-law rules governing sales of automobiles may apply in lieu of the statutory provisions found in Chap. 319, Fla.Stats. 1955, F.S.A. Ragg v. Hurd, Fla. 1952, 60 So.2d 673; Platt v. Dreka, Fla. 1955, 79 So.2d 670; Palmer v. R.S. Evans, Jacksonville, Inc., Fla. 1955, 81 So.2d 635.
In the Palmer case, supra, the Court found that the legal title to the vehicle remained in the seller, sought to be charged, but the beneficial title had passed to the purchaser. The Court held that the holding of mere naked title as security for payment was not sufficient to impose tort liability for the negligent operation of the car by another. This Court examined the evidence to determine whether under the common law the jury was authorized to return a verdict exonerating the seller, holder of the legal title. The Court found that the facts supported such a verdict since it found that the definite intention existed on the part of vendor and vendee to make immediate transfer of the beneficial ownership to the vendee. The Court said, 81 So.2d on page 636:
"* * * This intention of the parties, coupled with actual delivery of the goods and the tender and acceptance of the down payment, leaves us with no doubt that the sale had been completed, for the purposes of this case, before the accident occurred. Fletcher Motor Sales, Inc., v. Cooney, 158 Fla. 223, 27 So.2d 289. And see 46 Am.Jur., Sales, Sections 413 and 433. * * *"
The instant case is not as strong as the Palmer case, supra, for the purchaser here did not sign a purchaser's statement, for the purpose of obtaining credit, or a conditional sales contract, as did the purchaser in that case. Nevertheless, it is our opinion the evidence in the instant case was sufficient to establish the common-law prerequisites to a sale.
46 Am.Jur., Sales, Sec. 413 referred to in the Palmer case, provides that the cardinal factor, according to the common law and to the Uniform Sales Act, upon which the passing of title between a seller and a buyer depends is the intention of the parties. And Sec. 433, also referred to, states that the actual delivery of the goods is of the greatest importance, as evincing an intention to pass title. We reiterate that such an intent was shown in the evidence before the jury and we find no sufficient evidence of a contrary intent was conclusively established to preclude the jury's finding.
Accordingly, the judgment of the lower court is hereby affirmed.
TERRELL, C.J., and HOBSON, DREW and THORNAL, JJ., concur.