# Supreme Court of Florida

_____

No. SC12-2078
_____

**ROBERT L. CHRISTENSEN,**
Petitioner,

vs.

**MARY JO BOWEN, et al.,**
Respondents.

[April 10, 2014]

LEWIS, J.

This case is before the Court for review of the decision of the Fifth District

Court of Appeal in Bowen v. Taylor-Christensen, 98 So. 3d 136 (Fla. 5th DCA

2012). In its decision, the district court ruled upon the following question, which it

certified to be of great public importance:

> MAY A PERSON WHO INTENTIONALLY DIRECTS THAT
> TITLE BE ISSUED IN HIS NAME AS CO-OWNER, BY
> COMPLETING A SWORN APPLICATION FOR TITLE IN
> CONJUNCTION WITH THE PURCHASE OF A VEHICLE, AVOID
> LIABILITY UNDER THE DANGEROUS INSTRUMENTALITY
> DOCTRINE BY CLAIMING THAT HE NEVER INTENDED TO
> BE THE OWNER OF THE VEHICLE AND FURTHER CLAIMING
> THAT HE RELINQUISHED CONTROL TO A CO-OWNER OF
> THE VEHICLE?

Id. at 145. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We rephrase

the certified question as follows:

> MAY A PERSON WHOSE NAME IS ON THE CERTIFICATE OF
> TITLE OF A VEHICLE AS CO-OWNER AVOID VICARIOUS
> LIABILITY UNDER AN EXCEPTION TO THE DANGEROUS
> INSTRUMENTALITY DOCTRINE BY ASSERTING THAT HE
> NEVER INTENDED TO BE THE OWNER OF THE VEHICLE
> AND FURTHER CLAIMING THAT HE RELINQUISHED
> CONTROL TO A CO-OWNER OF THE VEHICLE?

We answer this question in the negative and hold that a person whose name is on

the certificate of title as co-owner is a beneficial owner with the right to control the

vehicle.

## BACKGROUND

Robert Christensen paid the purchase price for a Chrysler PT Cruiser on

April 29, 2003, and the certificate of title was placed in the name of both Mary

Taylor-Christensen and Robert Christensen as co-owners. They were married at

the time, but were involved in dissolution of marriage proceedings. Both

Christensen and his then wife Taylor-Christensen signed the application for

certificate of title, under penalty of perjury, to have the title issued to them jointly

as "owner" and "co-owner." Christensen did not receive the certificate of title

because it was mailed to the wife's address, but the certificate of title was issued in

the name of both Christensen and his wife, as "Mary G. Taylor-Christensen or

Robert L. Christensen." Although Christensen did not have a key to the vehicle or

use the vehicle, and did not reside with Taylor-Christensen or have access to her garage where the vehicle was kept, the title to the vehicle was in his name as co-owner.

Approximately twenty-two months after the vehicle was purchased, Taylor-Christensen negligently struck and killed Thomas Bowen while driving the vehicle. At the time of the accident, the title remained in the names of both Taylor-Christensen and Christensen and the vehicle was being operated with his consent. After the accident, Mary Jo Bowen, as executor of her husband's estate, filed an action for wrongful death against both Taylor-Christensen and Christensen. Bowen alleged that Christensen, as an owner of the vehicle, was vicariously liable for Taylor-Christensen's negligence under the dangerous instrumentality doctrine. Christensen, however, contended that he was not vicariously liable under the beneficial ownership exception to the dangerous instrumentality doctrine. He testified during trial that his intent was to purchase the vehicle as a gift for his wife and that he had no involvement with the vehicle after it was purchased.

Bowen moved for a directed verdict on the issue of ownership, but the trial court denied the motion. The jury was instructed that "[a]n owner of a vehicle is one who has legal title to the vehicle and who has a beneficial ownership with the right of control and authority over its use." The jury subsequently found that Christensen was not an owner of the vehicle. Bowen appealed the denial of the

motion for directed verdict to the Fifth District, and the district court, on rehearing, reversed the trial court's ruling. The Fifth District held that Christensen was liable under the dangerous instrumentality doctrine because he retained an identifiable property interest in the vehicle for himself by having his name placed on the title as co-owner, and that his subjective intent in signing the purchase and title documents was insufficient to defeat vicarious liability of a titleholder. The district court then certified to this Court the previously quoted question, and this review followed.

## ANALYSIS

### Standard of Review

The rephrased certified question presents a pure question of law, which is reviewed de novo. Rando v. Gov't Emps. Ins. Co., 39 So. 3d 244, 247 (Fla. 2010). Further, the issue in this case concerns an order entered on a motion for directed verdict, which is also reviewed de novo. Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So. 3d 247, 250 (Fla. 4th DCA 2009). When reviewing a trial court's ruling on a motion for directed verdict, this Court views the evidence and all inferences of fact in the light most favorable to the nonmoving party. Id.

### The Dangerous Instrumentality Doctrine and Beneficial Ownership Exception

The dangerous instrumentality doctrine serves to ensure financial recourse to members of the public who are injured by the negligent operation of a motor vehicle by imposing strict vicarious liability on those with an identifiable property

- 4 -

ownership interest in the vehicle.  See Kraemer v. Gen. Motors Acceptance Corp., 572 So. 2d 1363, 1365 (Fla. 1990).  The underlying rationale of the doctrine is that if a vehicle owner, who has control over the use of the vehicle, exercises his or her control by granting custody of the vehicle to another, the owner commits himself or herself to the judgment of that driver and accepts the potential liability for his or her torts.  S. Cotton Oil Co. v. Anderson, 86 So. 629, 634 (Fla. 1920) (quoting Barmore v. Vicksburg, S. & P. Ry. Co., 38 So. 210, 215 (Miss. 1905)).

A narrow exception to the dangerous instrumentality doctrine has been recognized in cases where the titleholder lacks the beneficial ownership of a vehicle.  See Aurbach v. Gallina, 753 So. 2d 60, 64 (Fla. 2000) ("In Metzel v. Robinson, 102 So. 2d 385, 385-86 (Fla. 1958), the Court made it clear that, absent a conditional sales agreement, the circumstances where an entity or individual who possessed legal title would not be vicariously liable under the dangerous instrumentality doctrine were extremely limited.").  Under this "beneficial ownership" or "bare legal title" exception, a titleholder may avoid vicarious liability if the titleholder demonstrates that he or she does not have the authority to exert any dominion or control over the vehicle and therefore is not a beneficial owner of the vehicle.  Id. at 63-65.  In such circumstances, this Court has held that the titleholder holds only "naked legal title" in the vehicle.  See Palmer v. R. S. Evans, Jacksonville, Inc., 81 So. 2d 635, 637 (Fla. 1955).

The beneficial ownership exception was first recognized in Palmer nearly sixty years ago. In Palmer, a car dealership held title to a vehicle that was involved in an accident. Id. at 636. At the time of the accident, the driver of the vehicle had already submitted the down payment, signed a conditional sales contract for the vehicle, and taken possession of the vehicle, but "bare" legal paper title remained with the dealership. Id. This Court held that the dealership possessed only naked legal title in the vehicle as security for payment of the full purchase price, and no longer had any authority over the use of the vehicle (i.e., beneficial ownership of the vehicle). Id. The Court further explained that the rationale for imposing vicarious liability under the dangerous instrumentality doctrine did not apply because the dealership could no longer exercise control over the use of the vehicle. As a result, the dealership was not an owner of the vehicle and was not liable under the dangerous instrumentality doctrine. Id. Thus, under Palmer, a person or entity who holds bare paper title in a vehicle solely under a conditional sales agreement is exempted from vicarious liability under the dangerous instrumentality doctrine.

Subsequently, this Court extended the beneficial ownership exception recognized in Palmer to prohibit vicarious liability in the situation where an actual common law sale of a vehicle had occurred but formal title had not yet been transferred. See McAfee v. Killingsworth, 98 So. 2d 738, 740 (Fla. 1957). In McAfee, the titleholder left the vehicle with the operator of a filling station to sell.

Id. at 739.  A prospective buyer test drove the vehicle, gave the filling station operator less than the full purchase price, and departed in the vehicle.  Id.  The buyer collided with another vehicle before speaking with the titleholder regarding the sale.  Id.  This Court held that sufficient evidence existed to satisfy the common law prerequisites for a sale and applied Palmer to conclude that the titleholder had transferred beneficial ownership of the vehicle to the buyer.  Id. at 740.

However, shortly after deciding McAfee, this Court declined to further extend the exception.  See Metzel, 102 So. 2d at 386.  In Metzel, the titleholder had title issued in her name for a vehicle that was purchased by her nephew because the seller objected to an eighteen-year-old signing the financing paperwork.  Id. at 385. The nephew lived with the aunt and the aunt insured the vehicle.  Id.  Between the time that title was issued and the time of the accident, the aunt took no action to remove her name from the title, but she also had no further involvement with the vehicle.  Id.  This Court held that the aunt was still in a position to exert some dominion and control over the vehicle, and therefore she held an ownership interest as a matter of law.  Id. at 386.  Thus, the relevant inquiry after Metzel for beneficial ownership is whether a titleholder is in a position to exercise any dominion and control over a vehicle, and the use or non-use of the vehicle by the titleholder is insufficient to establish a lack of beneficial ownership.

More recently, in Aurbach, this Court addressed whether a person's ability to exert dominion and control over a vehicle alone was sufficient to impose vicarious liability, even absent title ownership. 753 So. 2d at 65. In Aurbach, a married couple purchased and maintained a vehicle with joint funds, but with the intention that one of their daughters be the primary driver. Id. at 61. The vehicle was titled in the wife's name. Id. The daughter negligently operated the vehicle and caused an accident. A person injured in the accident sought to hold the father liable on the basis that he was in a position to exert dominion and control over the vehicle. Id. The jury specifically found that the father exercised control over the vehicle. This Court recognized that in the past it had consistently required a person to have an identifiable property interest in the vehicle involved in the accident for vicarious liability to be imposed. Id. at 62. Accordingly, this Court held that the ability of the father to exert some dominion and control over the vehicle did not constitute a basis for vicarious liability under the dangerous instrumentality doctrine. Id. at 65.

This precedent demonstrates that vicarious liability arises from an identifiable property interest in a vehicle possessed by the person held to be vicariously liable which creates the right to exert some dominion and control over the vehicle. See, e.g., id. at 62-63. The precedent further establishes that the beneficial ownership exception is narrow and applies only where the titleholder

holds title under a conditional sales agreement or has sold the vehicle and transferred possession. In such cases, the underlying rationale of the dangerous instrumentality doctrine—that the titleholder has committed himself or herself to the driver's judgment—does not apply. However, in the absence of evidence that the titleholder holds only naked legal title under a conditional sales contract or a faulty incomplete transfer, precedent demonstrates that the certificate titleholder is a beneficial owner as a matter of law and is liable for the permissive use of the vehicle by another person.

**Certified Question**

The rephrased certified question relates to the scope of the beneficial ownership exception that was first recognized in Palmer. Specifically, the question presented is whether the beneficial ownership exception applies to an individual who applied for title to be issued in his or her name, but who neither used nor had physical access to the vehicle. We hold that under these circumstances, a joint titleholder who has not divested himself or herself of the ownership interest is an owner as a matter of law.

A joint titleholder holds a joint tenancy interest in the vehicle and, accordingly, has the right to possess and use the vehicle. See § 319.22(2)(a)(1)(a), Fla. Stat. (2013) ("When a motor vehicle . . . is registered in the names of two or more persons as coowners in the alternative by the use of the word 'or,' such

- 9 -

vehicle shall be held in joint tenancy."). Each joint titleholder has statutorily conferred legal rights in the vehicle. Id. Each titleholder enjoys a right of survivorship in the vehicle. Id. Additionally, where the names of joint titleholders are separated by the word "or" on the title documentation, as in the instant case, either may unilaterally encumber or sell the vehicle. Id. Each of these rights places a joint titleholder in a position to exercise authority or control over the vehicle.

The legal rights of a titleholder exist regardless of whether they are actually exercised. The failure of a titleholder to use the vehicle, or otherwise exercise his or her legal rights, does not eliminate these rights. Consequently, the exclusive use of the vehicle by one titleholder does not destroy the beneficial ownership of another titleholder. Beneficial ownership continues to exist with regard to the non-using titleholder because he or she remains in a legal position to exert dominion or control over the vehicle.

Further, we hold that an assertion by a joint titleholder that he or she never subjectively intended to be a titleholder is irrelevant to beneficial ownership of a vehicle. See Johnson v. Deangelo, 448 So. 2d 581, 582 (Fla. 5th DCA 1984) (holding that the subjective intent of a titleholder in placing her name on a title certificate was legally immaterial and insufficient as a matter of law to rebut title ownership and stating that the titleholder "intentionally caused her name to be

- 10 -

placed on the title certificate, it did not happen by accident or without her knowledge and consent, nor did she hold her formal ownership interest in the vehicle as a mere security device or because she had made a good faith but ineffectual attempt or effort to transfer her title interest."). Upon purchasing a vehicle, an owner (or owners) must apply to the Florida Department of Highway Safety and Motor Vehicles to have title issued in his or her name. § 319.23(1), Fla. Stat. (2013). The application must be attested to by the applicant(s) under penalty of perjury. Fla. Dept. of Highway Safety & Motor Vehicles, Application for Certificate of Title with/without Registration 2 (2012), available at http://www.flhsmv.gov/dmv/forms/BTR/82040.pdf (last visited Dec. 8, 2013). If more than one person applies for title, the co-owners must apply on the same form. Id. Thus, each applicant knowingly enters into joint title ownership. When two individuals submit an application for joint ownership, each co-owner commits himself or herself to the judgment of the other and is subject to vicarious liability for the other's negligent use of the vehicle. Should a titleholder never intend to use a vehicle and wish to avoid vicarious liability, then the titleholder must divest himself or herself of any interest in the vehicle. See Horne v. Vic Potamkin Chevrolet, Inc., 533 So. 2d 261, 262 (Fla. 1988) ("It is clear . . . that under existing law there is no liability on the part of the seller of a motor vehicle where beneficial ownership or legal title, together with possession, have been transferred to a

- 11 -

purchaser and injuries occur because of the negligence of the purchaser in operating the vehicle. In short, transfer of ownership cuts off liability on the part of the former owner.").

Therefore, we conclude that beneficial ownership is unrelated to physical access to a vehicle, past use of a vehicle, or intent to use or not use a vehicle. Rather, beneficial ownership arises from legal rights that allow an individual to exert some dominion and control over the use of the vehicle. Thus, because a titleholder has legal rights in the vehicle and is in a position to exert some dominion and control over the vehicle, he or she is a beneficial owner. The injection of theories of subjective intent would destabilize the law with regard to motor vehicles in Florida.

This construction of beneficial ownership is consistent with <u>Palmer</u> as it was construed in <u>Metzel</u> and <u>McAfee</u>. In these cases, the analysis centered on the objective steps taken by a titleholder to transfer his or her interest in the vehicle, and whether that transfer prevented the titleholder from being able to control the use of the vehicle. <u>Palmer</u>, 81 So. 2d at 637; <u>Metzel</u>, 102 So. 2d at 386; <u>McAfee</u>, 98 So. 2d at 740. In these cases, any subjective intent of the titleholder with regard to placement of his or her name on the title is not relevant to the beneficial ownership analysis.

Furthermore, the irrelevance of subjective intent is consistent with Florida's statutory scheme, in that vehicle ownership is determined through legal title. Title XXIII of the Florida Statutes, which governs motor vehicles, defines "owner" in several chapters, and, in all but one chapter, the owner is defined as the titleholder, subject to exceptions for conditional vendees, lessors, and mortgagees.[1] Thus, the

---

1. For example, Chapter 324, "Financial Responsibility," provides:

> Owner.—A person who holds the legal title of a motor vehicle; or, in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this chapter.

§ 324.021(9)(a), Fla. Stat. (2013). Similarly, Chapter 316, "State Uniform Traffic Control," provides:

> OWNER.—A person who holds the legal title of a vehicle, or, in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee, or lessee, or mortgagor shall be deemed the owner, for the purposes of this chapter.

§ 316.003(26), Fla. Stat. (2013). Additionally, Chapter 322, "Driver's Licenses," provides:

> "Owner" means the person who holds the legal title to a vehicle. However, if a vehicle is the subject of an agreement for the

- 13 -

Legislature has developed a system whereby the rights and responsibilities of owners of motor vehicles are both assigned and dependent upon the existence of legal title. In reaching this conclusion, we note that title is a clear and simple method of determining ownership. If title ownership were subject to attack based on the subjective intent of a titleholder, then all types of cases that involve motor vehicles would become subject to litigation on ownership issued. The better and more efficient and consistent rule is that title determines ownership, and ownership can only be disproven by objective evidence of a conditional sale or incomplete faulty transfer.

To the extent Christensen asserts that the district courts have interpreted the beneficial ownership exception to be applicable where exclusive use and possession reside in a person other than the titleholder, we find these cases to be fully distinguishable. See Wummer v. Lowary, 441 So. 2d 1151, 1151-52 (Fla. 4th DCA 1983) (applying beneficial ownership exception where employer refinanced

conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or if a mortgagor of a vehicle is entitled to possession, such conditional vendee, lessee, or mortgagor is the owner for the purpose of this chapter.

§ 322.01(31), Fla. Stat. (2013). These statutory definitions in 2005, when the accident in this case occurred, contained identical language. §§ 316.003(26), 322.01(30), 324.021(9)(a), Fla. Stat. (2005).

the vehicle for employee and held title as refinancer); see also Carrasquero v. Ethan's Auto Express, Inc., 949 So. 2d 223, 224 (Fla. 3d DCA 2006) (applying beneficial ownership exception where titleholder "agreed to take title in its name only as a tax-delaying convenience to [the beneficial owner].") (footnote omitted); Plattenburg v. Dykes, 798 So. 2d 915, 916 (Fla. 1st DCA 2001) (applying beneficial ownership exception where defendant had presented sufficient evidence that he gifted his entire interest in the vehicle, and the donee simply had not yet completed the paperwork to transfer the title at the time of the accident). Unlike the instant case, these cases involved either a financial transaction to benefit the beneficial owner of the vehicle or an incomplete transfer of the vehicle. Exclusive possession in those cases simply demonstrated that the titleholder had no legal rights with regard to the subject vehicles.

Instead, the instant case is more closely aligned with Hertz Corp. v. Dixon, 193 So. 2d 176 (Fla. 1st DCA 1966), and Pennsylvania National Mutual Casualty Insurance Co. v. Ritz, 284 So. 2d 474 (Fla. 3d DCA 1993), in which the titleholders were held liable despite having no involvement with the vehicles in question. In Hertz and Ritz, although all indicia of ownership resided in the negligent driver, the titleholder had enabled the driver to acquire the vehicle by having title placed in his name, and the driver possessed and drove the vehicle with the titleholder's knowledge and consent. Hertz, 193 So. 2d at 177 ("Here, not only

- 15 -

was [the non-driving joint titleholder] one of the record title holders, but in fact had put in motion and made possible the operation of the automobile by [the driver], who, as a minor, could not have bought the automobile.  Not only did [the driver] operate the car as a co-owner, but with the knowledge, consent and direct participation by [the non-driving joint titleholder] in the acquisition of title."); Ritz, 284 So. 2d at 477.  The beneficial ownership exception was not applied and the titleholders, because title was placed in their names and they consented to the use of the vehicle by another, were determined to be vicariously liable.

Based on the foregoing, we answer the rephrased certified question in the negative and hold that a person whose name is on the certificate of title of a vehicle as co-owner cannot avoid vicarious liability under the "beneficial ownership" or "naked legal title" exception to vicarious liability under the dangerous instrumentality doctrine.

**This Case**

It is undisputed that Christensen was named on the title as a co-owner of the vehicle.  The title objectively reflects that Christensen gave only a co-ownership interest to Taylor-Christensen while retaining a co-ownership interest for himself.  Therefore, to divest himself of his co-ownership interest, and relieve himself from the possibility of vicarious liability, Christensen should have transferred his interest at some point after the purchase of the vehicle.  Christensen presented no

relevant evidence that, in the twenty-two months between the time that he had title placed in his name as co-owner and the accident, he transferred his co-ownership interest in the vehicle.

The only evidence presented by Christensen to establish he no longer owned the vehicle was that: (1) he did not use the vehicle; (2) he was not in a position to use the vehicle because he did not live with Taylor-Christensen, he could not access the garage where she kept the vehicle, and he did not possess keys to the vehicle; and (3) he subjectively intended to gift the vehicle to Taylor-Christensen when he purchased it. We conclude that this evidence was insufficient as a matter of law to rebut the legal principle that Christensen was a beneficial owner.

Christensen's non-use of the vehicle does not demonstrate that he transferred his interest in the vehicle to Taylor-Christensen, or that he was not the beneficial owner. As previously discussed, this Court established in <u>Metzel</u> that the simple failure to exercise control does not demonstrate that a titleholder is not in a position to exert some dominion and control over the vehicle. <u>Metzel</u>, 102 So. 2d at 386. Rather, the existence of the legal <u>right</u> to exercise control and the <u>actual</u> exercise of control are separate concepts, and the legal <u>right</u> to exercise control is the relevant inquiry for beneficial ownership.

Christensen, as a joint titleholder, had a legal right to encumber, sell, or take possession of the vehicle. Had he wished, Christensen could have done any of the

- 17 -

above, and the mere fact that he did not act on these legal rights does not alter or diminish their existence. Further, had Taylor-Christensen died, Christensen would have inherited the vehicle because of his joint ownership interest. See § 319.22(2)(a)(1)(a), Fla. Stat. (2013). Therefore, he indisputably was in a position to exercise dominion and control over the vehicle and was a beneficial owner of the vehicle.

## CONCLUSION

Based on the foregoing, we answer the rephrased certified question in the negative. We hold that Christensen was an owner of the vehicle as a matter of law and approve the decision of the Fifth District reversing the trial court's ruling on the motion for directed verdict.

It is so ordered.

POLSTON, C.J., and PARIENTE, QUINCE CANADY, LABARGA, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

Fifth District - Case No. 5D09-3888

(Brevard County)

Raoul G. Cantero, III, David P. Draigh and Jesse Luke Green of White & Case LLP, Miami, Florida; Warren B. Kwavnick of Cooney Trybus Kwavnick Peets, Fort Lauderdale, Florida; George Alexander Vaka of Vaka Law Group, P.L.,

Tampa, Florida; and Dennis Richard O'Connor of O'Connor & O'Connor, LLC, Winter Park, Florida,

for Petitioner

Stephen John Pajcic, III and Thomas Fitzpatrick Slater of Pajcic & Pajcic, P.A., Jacksonville, Florida; William A. Bald of Dale, Bald, Showalter, Mercier & Green, P.A., Jacksonville, Florida; and S. Sammy Cacciatore, Jr. of Nance, Cacciatore, Hamilton, Berger, Nance & Cacciatore, Melbourne, Florida,

for Respondent