Pinette v Gauthier (2026 NY Slip Op 50049(U))

[*1]

Pinette v Gauthier

2026 NY Slip Op 50049(U)

Decided on January 15, 2026

Civil Court Of The City Of New York, Kings County

Waterman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 15, 2026
Civil Court of the City of New York, Kings County

Sheffa Pinette, Plaintiff(s)

againstAnaelle Gauthier, Defendant(s)

Index No. CV-028506-24/KI

Plaintiff: Self-represented, Sheffa PinetteDefendant: Koch Law, PLLC, by Les Koch, Esq.

Lola Waterman, J.

A Bench trial was held in this action on December 11, 2025, based on the endorsed complaint filed on April 7, 2025. On its claims for conversion, breach of contract, and intentional infliction of emotional distress, Plaintiff is seeking damages in the amount of $50,000.00 collectively. Defendant asserts counterclaims seeking damages in the amount of $24,000.00, alleging frivolous claims, defamatory statements, failure to take responsibility for the vehicle, communications with law enforcement, attempts to have Defendant arrested, unreimbursed travel expenses, and alleged employment and educational damages. This dispute arises from an agreement between the parties to facilitate the purchase of a vehicle for Plaintiff on or about November 7, 2017.
LIST OF EXHIBITS
Plaintiff's Exhibits:1. Text messages between the parties2. Packet to Florida Department of Motor Vehicles: Certificate of Title; An Affidavit of Correction of Purchases Made; A Power Of Attorney From The State Of Florida from Plaintiff to a Mr. Manuel St. Guillen, Proof Of Insurance; A State of Florida Application For Certificate Of Motor Vehicle and A State Of Florida Notice Of Sale and/or Bill Of Sale.3. Plaintiff's Letter to Manuel St. Guillen4. Communication with Detective5. Financial Breakdown - Itemized List of Plaintiff's Investment into Subject Vehicle; Key Replacement receipt6. Text communication between Plaintiff and Defendant's Counsel regarding agreement7. Letter from Plaintiff's Counsel to Defendant8. Statements from Citizens Bank, Citizens One Bank Approval letter and Finance Agreement9. Bank Statements — car and car insurance payments10. Plaintiff's Hospital Billing Statements11. Text communication between Plaintiff's Family and Defendant12. Expense List Post Possession — Ride Share, Public Transportation13. Plaintiff Psychiatric Reports14. Car Location Reports
Defendant's Exhibits:A. Printed copy of Florida Statute 319.22B. Florida issued title to the subject vehicle — Kia Soul; Title Certification dated July 9, 2024C. New York and New Jersey Tolls Bills and Fines and Airfare TicketsD. Texted conversations between the parties from January 2024 through May 2024E. Payment and Invoices pertaining to Defendant's legal feesF. Defendant's Family Medical Leave Act (FMLA) Request to EmployerG. Defendant's Merrimack College Billing StatementH. Auto Body Repair Shop's InvoiceI. Pictures of Vehicle, dated August 9, 2024

 WITNESSES' TESTIMONIES

 Plaintiff's Testimony
Plaintiff testified that the parties entered into an oral agreement pursuant to which Defendant co-signed for the purchase of a 2014 Kia Soul for Plaintiff's sole use. The vehicle was registered and titled in the State of Florida in both parties' names. Plaintiff assumed responsibility for all loan payments and all carrying charges associated with the vehicle. Plaintiff further testified that the parties agreed that once the vehicle was paid in full, Defendant would be removed from the title.
Plaintiff testified that she relocated to New York and paid off the vehicle sometime in 2023. At Defendant's request, on or about December 2023, Plaintiff began the process of removing Defendant's name from the title. Plaintiff stated that the process took time, that there were delays associated with the New York Department of Motor Vehicles, and that Defendant became increasingly impatient during this period.
Plaintiff testified that Defendant informed her that she had begun receiving parking tickets and toll violations related to the vehicle, which Plaintiff was asked to pay immediately. Plaintiff explained that because the vehicle remained titled in both parties' names, Defendant was concerned that unpaid tickets or judgments could negatively impact her employment at a bank. Plaintiff testified that while she was in the process of removing Defendant's name from the title, Defendant unilaterally removed Plaintiff's name from the vehicle's title in or about August 2024 through the Florida Department of Highway Safety and Motor Vehicles, without Plaintiff's knowledge or consent.
Plaintiff further testified that after removing Plaintiff's name from the title, Defendant directed her cousin to take possession of the vehicle from Plaintiff's driveway in New York. Plaintiff stated that although the parties had been communicating, she was unaware that Defendant had taken the vehicle and therefore reported it stolen to the police. Plaintiff testified [*2]that she later learned Defendant had taken the vehicle, and that the detective assigned to the case ultimately had the vehicle impounded. Plaintiff testified that when both parties appeared at the impound lot, Defendant presented a title reflecting herself as the sole title holder. Plaintiff was instructed to remove her personal belongings from the vehicle and to surrender the keys to Defendant.
Plaintiff further testified that during her interactions with Defendant concerning the removal of Defendant's name from the title, Defendant's behavior was extreme and inconsistent with their more than twelve-year friendship. Plaintiff stated that Defendant repeatedly contacted her to expedite the title change, despite knowing that the process required time. Plaintiff testified that Defendant threatened that Plaintiff would lose the vehicle and/or go to jail. Plaintiff stated that upon being notified of continuing outstanding tolls and tickets, she agreed to pay them upon the return of the vehicle. Plaintiff further testified that Defendant escalated the dispute by involving family members, including making statements to their parents that Plaintiff contended were untrue. Plaintiff stated that Defendant's conduct caused her extreme stress and embarrassment and that she was hospitalized due to depression and anxiety.
On cross-examination, Plaintiff testified that the title, license plates, and registration for the vehicle were issued by the State of Florida. Plaintiff acknowledged that although she had resided in New York for approximately one year, the Florida plates had not been changed at the time Defendant took possession of the vehicle. Plaintiff further testified that she had been incrementally paying the tolls and fines prior to the vehicle being taken. Plaintiff stated that the ongoing dispute contributed to her hospitalization for depression. Plaintiff also testified that although the parties were discussing resolving the outstanding issues concerning the vehicle and the tickets, her stepfather, Manny, had promised to make a payment toward those obligations.
Defendant's TestimonyDefendant testified that Florida law governs this dispute, as the parties were residents of Florida at the time of purchase, the vehicle was purchased and titled in Florida, and title was held pursuant to Florida law. Defendant testified that based on numerous conversations with Plaintiff, Plaintiff's failure to promptly resolve outstanding tolls and fines, and Defendant's concern that such obligations could become judgments, she acted pursuant to the authority vested in her under Florida law.
Defendant testified that she was employed as a Data Analyst with Bank of America and that her position required her to maintain a clean record, free from judgments or convictions. Defendant stated that she repeatedly requested that Plaintiff retitle the vehicle solely in Plaintiff's name and address the outstanding violations. Defendant further testified that Plaintiff's report of the vehicle as stolen required Defendant to travel to and from New York and resulted in her requesting a workplace accommodation to work fully remotely and withdrawing from graduate school.
Defendant testified that after taking possession of the vehicle and providing Plaintiff with a deadline to pay the outstanding fees, the vehicle was assessed for sale. Defendant stated that a CarMax adjuster initially valued the vehicle at $1,500 due to visible damage, including dents. To increase the vehicle's value, Defendant testified that she paid approximately $1,100 for repairs, after which the vehicle was sold for $4,500.
On cross-examination, Defendant acknowledged that the parties' plan was always for Defendant's name to be removed from the title once Plaintiff paid the vehicle in full. Defendant further testified that as a result of Plaintiff reporting the vehicle as stolen, Defendant retained counsel in New York to avoid potential arrest. Defendant also testified that she paid some of the tolls incurred by Plaintiff between 2021 and 2023, which she discovered in or about September 2024.

 FINDINGS & ANALYSIS

Choice of LawThe Court finds that resolution of this dispute hinges on the applicable choice of law. As neither party fully briefed this issue, the Court has independently applied New York's "center of gravity" or "grouping of contacts" analysis to determine which state has the most significant relationship to the dispute. See, Eagle Ins. Co. v. Singletary, 279 AD2d 56, 58—59 (2nd Dept., 2000). In conducting this analysis, the Court considered the place of contracting, the place of negotiation and performance, and the domicile or residence of the parties at the time the agreement was formed.
The record establishes that the parties' agreement was entered into in Florida, the vehicle was purchased and titled in Florida, and the rights and obligations at issue arise from a Florida-issued certificate of title and Florida's motor vehicle title statute. At the time of contracting, both parties resided in Florida. Although certain events giving rise to this dispute occurred in New York after Plaintiff relocated, those contacts are incidental to the underlying ownership and contractual rights established in Florida. Florida therefore has the most significant relationship to the parties and the transaction.
Accordingly, applying New York's choice-of-law principles, the Court concludes that Florida law governs the substantive claims in this action. See also, Matter of Allstate Ins. Co. (Stolarz), 81 NY2d 219, 226 (1993).
ConversionUnder Florida law, conversion is defined as an act of dominion wrongfully asserted over another's property inconsistent with the owner's rights therein. Star Fruit Co. v. Eagle Lake Growers, Inc., 160 Fla. 130, 132 (Fla. 1948); Utah Power Sys. v. Dog, 352 So. 3d 504, 508 (Fla. 1st DCA 2022).
The vehicle at issue was titled in Florida in the names of Plaintiff OR Defendant. Pursuant to Fla. Stat. § 319.22(2)(a), where a motor vehicle is titled in the alternative, either co-owner has the authority to endorse and transfer title without the consent of the other. Florida courts have repeatedly emphasized that the certificate of title governs authority to convey, and that third parties are entitled to rely upon it. See, Christensen v. Bowen, 140 So. 3d 498, 501—02 (Fla. 2014); Palmer v. R.S. Evans, Jacksonville, Inc., 81 So. 2d 635, 637 (Fla. 1955).
The undisputed facts establish that Plaintiff was the sole driver of the vehicle, paid the purchase price in full, and relocated to New York, where she incurred additional parking, toll, and related violations. Because Defendant's name appeared first on the Florida title, those violations were issued in Defendant's name at her Florida address. Defendant credibly testified that she repeatedly informed Plaintiff of the outstanding violations, requested that Plaintiff pay [*3]them, and urged Plaintiff to retitle the vehicle solely in Plaintiff's name. Defendant further testified that she was employed by a financial institution and was concerned that unpaid violations or judgments could adversely affect her employment.
Under these circumstances, the Court finds that Defendant's act of selling the vehicle was authorized by Fla. Stat. § 319.22(2)(a) and therefore does not constitute conversion of the vehicle itself. As the Florida Supreme Court explained in Christensen, the statute is intended to provide certainty in vehicle transactions and protect reliance on the face of the title, even where beneficial ownership may differ. Christensen at 502.
However, statutory authority to convey title does not resolve competing claims to the proceeds of a sale between co-owners. The evidence establishes that Plaintiff paid the entire purchase price for the vehicle and that Defendant's name appeared on the title solely to facilitate the purchase. Defendant received the proceeds of the sale and exercised exclusive control over their disposition.
To the extent Defendant applied a portion of the proceeds to satisfy outstanding violations incurred by Plaintiff, such use was reasonable and directly related to liabilities arising from Plaintiff's operation of the vehicle. However, any remaining proceeds constitute specific, identifiable funds. Because Defendant controlled both the sale and the proceeds, any uncertainty regarding the amount of proceeds retained must be resolved against Defendant.
Accordingly, Plaintiff has not established conversion of the vehicle itself but has established conversion of the sale proceeds to the extent Defendant retained funds beyond amounts reasonably applied to Plaintiff's outstanding obligations.
Damages Awarded to PlaintiffThe evidence establishes that Defendant sold the vehicle for approximately $4,500. Defendant credibly testified that she used a portion of the proceeds to pay parking tickets, tolls, and expenses arising from Plaintiff's operation of the vehicle.
Defendant has proven deductions in the amount of $175.62, representing amounts reasonably applied to Plaintiff's outstanding obligations, and $1,125.80 for vehicle repairs undertaken to facilitate the sale. After deducting those amounts, the Court finds that Defendant retained proceeds in the amount of $3,198.58, which constitute money wrongfully withheld from Plaintiff.
Plaintiff is therefore entitled to a monetary judgment in the amount of $3,198.58 on her claim for conversion of proceeds.
Breach of ContractTo prevail on a breach of contract claim under Florida law, a plaintiff must establish (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach. See, Farman v. Deutsche Bank Nat'l Trust Co., 311 So. 3d 191, 195 (Fla. 2nd DCA 2020).
Based on the credible testimony of both parties, the Court finds that an oral agreement existed whereby Defendant co-signed the purchase of a 2014 Kia Soul for Plaintiff's exclusive use, Plaintiff assumed responsibility for all loan payments and carrying charges, and Defendant would be removed from the title once the vehicle was paid in full. Defendant acknowledged that this was always the parties' understanding. Plaintiff credibly testified that she fully performed [*4]her obligations, including paying all loan installments and completing payment in 2023. The Court finds that Plaintiff met her contractual obligations.
The Court further finds that Defendant materially breached the agreement by unilaterally removing Plaintiff's name from the title and taking possession of the vehicle after Plaintiff completed payment, conduct inconsistent with the parties' agreement that Defendant would relinquish control upon payoff.
However, Plaintiff has not provided credible documentary evidence regarding the vehicle's condition, mileage, or value at the time it was taken or sold. As a result, the Court cannot determine traditional expectancy damages attributable to the breach. Plaintiff therefore has not established compensatory damages for breach of contract.
Accordingly, while the Court finds that Defendant breached the parties' agreement, the breach of contract claim does not provide an independent basis for monetary relief.
Intentional Infliction of Emotional DistressAt the close of Plaintiff's case, Defendant, through counsel, moved for a directed verdict dismissing Plaintiff's claim for intentional infliction of emotional distress. The Court reserved decision on the motion at that time and now addresses it.
A motion for directed verdict should be granted only where, viewing the evidence in the light most favorable to the nonmoving party, no reasonable factfinder could find in that party's favor. If there is any evidence upon which a reasonable factfinder could lawfully base a verdict for the nonmoving party, the motion must be denied.
Here, Plaintiff presented testimony concerning Defendant's repeated communications, alleged threats, involvement of family members, and Plaintiff's resulting emotional distress. Viewing that evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff presented sufficient evidence to survive a directed verdict motion. Accordingly, Defendant's motion for a directed verdict on the claim for intentional infliction of emotional distress is denied.
The Court therefore proceeds to determine the claim on the merits.
To prevail on a claim for intentional infliction of emotional distress under Florida law, a plaintiff must establish that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct caused severe emotional distress. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278—79 (Fla. 1985). The Florida Supreme Court has made clear that this cause of action is reserved for conduct that is "atrocious" and "utterly intolerable in a civilized community," and that even intentional conduct causing serious emotional distress will not suffice unless it meets this exacting standard. Id.
Plaintiff testified that Defendant repeatedly contacted her regarding removal of Defendant's name from the vehicle title, threatened that Plaintiff would lose the vehicle or face legal consequences, and involved family members in the dispute. Plaintiff further testified that this conduct caused her significant stress, embarrassment, and anxiety, culminating in a hospital admission.
While the Court does not minimize Plaintiff's subjective experience, the evidence establishes that Defendant's conduct arose in the context of a dispute concerning a jointly titled vehicle. Defendant's actions were directed toward protecting herself from accumulating fines, [*5]tolls, and potential adverse consequences arising from Plaintiff's continued use of the vehicle, rather than toward inflicting emotional harm on Plaintiff. Florida courts have consistently held that such conduct, even when aggressive or distressing, does not rise to the level contemplated by the Florida Supreme Court in Metropolitan. See, Williams v. City of Minneola, 575 So.2d 683, 692 (Fla. 5th DCA 1991) (holding that mere threats, indignities, or annoyances are insufficient).
The Court further notes that Defendant arranged for a third party in New York to take possession of the vehicle from where it was parked. As discussed elsewhere in this decision, Defendant had statutory authority to transfer title under Fla. Stat. § 319.22(2)(a), and her conduct, though found to give rise to contractual liability and liability for conversion of proceeds, was undertaken for the purpose of asserting control over property, not as a campaign of harassment or intimidation. Conduct undertaken to resolve or secure a disputed property interest, even if ill-advised or legally imperfect, does not rise to the level of outrageousness contemplated by the Florida Supreme Court in Metropolitan.
Moreover, the medical records admitted at trial do not establish a causal connection between Defendant's conduct and the emotional harm alleged by Plaintiff. The records do not attribute Plaintiff's hospitalization or symptoms to Defendant's actions, nor do they demonstrate that Defendant's conduct was the proximate cause of severe emotional distress. Absent competent evidence of causation, Plaintiff has failed to meet an essential element of the claim.
Accordingly, the Court finds that Plaintiff has not met her burden of proof to establish intentional infliction of emotional distress. Defendant's conduct, viewed in its full factual and legal context, does not rise to the level contemplated by the Florida Supreme Court in Metropolitan, and Plaintiff failed to demonstrate a causal connection between Defendant's actions and the alleged emotional harm.
Judgment is therefore entered in favor of Defendant on the claim for intentional infliction of emotional distress.

DEFENDANT'S COUNTERCLAIMS
Defendant asserts counterclaims seeking damages in the amount of $24,000.00, alleging that Plaintiff commenced frivolous claims, made defamatory statements, failed to take responsibility for the vehicle and related violations, improperly communicated with the New York City Police Department resulting in the vehicle being towed, attempted to have Defendant arrested, and failed to resolve the dispute in accordance with the law. Defendant further seeks reimbursement for legal fees and costs incurred in defending this action, as well as expenses for flights to and from New York to meet with law enforcement and to appear in court. Defendant also alleges damages arising from taking medical leave under the Family and Medical Leave Act (FMLA) and withdrawing from graduate school. The Court addresses these counterclaims in turn.
Frivolous Claims and Attorneys' FeesDefendant seeks recovery of legal fees and costs based on Plaintiff's alleged frivolous conduct in commencing this action. Under New York law, attorneys' fees are incidents of litigation and may not be recovered unless authorized by statute, court rule, or agreement between the parties. Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 NY2d 487, 491 (1989).
Here, Defendant has failed to identify any contractual provision, court rule, or statutory authority entitling her to recover attorneys' fees. Moreover, while Defendant characterizes Plaintiff's claims as frivolous, the Court has found that Plaintiff established a material breach of contract and prevailed in part on her claims relating to the disposition of the vehicle. Under these circumstances, Plaintiff's claims cannot be deemed frivolous as a matter of law.
Accordingly, Defendant's counterclaim for attorneys' fees and costs is denied.
Alleged Defamatory Statements and Communications with Law EnforcementDefendant alleges that Plaintiff made defamatory statements and improperly communicated with the NYPD in an effort to have Defendant arrested. However, Defendant failed to plead or prove the essential elements of defamation, including the specific statements alleged to be defamatory, their publication to a third party, falsity, or resulting damages.
Further, the evidence establishes that Plaintiff reported the vehicle as stolen based on her belief that the vehicle had been taken without her knowledge or consent. While the Court has found Plaintiff's legal position ultimately unsuccessful as to conversion, Defendant failed to demonstrate that Plaintiff's report was made with malice, bad faith, or an intent to defame. Defendant likewise failed to establish that Plaintiff's communications with law enforcement were unlawful or actionable.
Accordingly, these counterclaims are dismissed.
Travel Expenses and Related CostsDefendant seeks reimbursement for flights to and from New York to meet with a detective and to attend court proceedings. However, these expenses arose directly from Defendant's own actions in arranging for the vehicle to be taken from New York and subsequently sold. As the Court has found that Defendant materially breached the parties' agreement by unilaterally removing Plaintiff's name from the title and taking possession of the vehicle, Defendant cannot shift the resulting costs of litigation-related travel to Plaintiff.
Moreover, Defendant did not submit competent proof establishing that such travel expenses were necessary, reasonable, or directly caused by Plaintiff's conduct, as opposed to Defendant's own decisions.
Accordingly, Defendant's counterclaim for travel expenses is denied.
Alleged Employment and Educational DamagesDefendant further claims damages arising from taking medical leave under the FMLA and withdrawing from graduate school. However, Defendant failed to present competent evidence establishing a causal connection between Plaintiff's conduct and these alleged damages. No medical records, employer documentation, or school records were submitted demonstrating that Plaintiff's actions necessitated medical leave or withdrawal from school.
As with Plaintiff's emotional distress claim, the absence of proof of causation is fatal to Defendant's claim. Speculative or conclusory assertions of harm are insufficient to sustain a claim for damages.
Accordingly, these counterclaims are dismissed.
[*6]Unpaid Tolls, Repairs, and Related InvoicesDefendant submitted invoices and billing statements for tolls, parking violations, and vehicle repairs. However, the documents admitted into evidence reflect amounts allegedly due and owing, not proof that Defendant actually paid those amounts. Defendant did not submit receipts, canceled checks, or other competent proof of payment.
Absent proof that Defendant incurred and satisfied these expenses, the Court cannot award damages based on them.
Conclusion on CounterclaimsFor the foregoing reasons, the Court finds that Defendant has failed to meet her burden of proof on all counterclaims asserted in this action. Defendant's counterclaims are therefore dismissed in their entirety.
Accordingly, it is hereby
ORDERED, that judgment is entered in favor of Plaintiff and against Defendant on Plaintiff's claim for conversion of proceeds in the amount of $3,198.58; and it is further
ORDERED, that Plaintiff's claims for conversion of the vehicle itself, breach of contract damages, and intentional infliction of emotional distress are dismissed; and it is further
ORDERED, that Defendant's counterclaims are dismissed in their entirety; and it is further
ORDERED, that the Clerk is directed to enter judgment accordingly; and it is further
ORDERED, that Defendant's counsel shall serve a copy of this Decision and Order with notice of entry within twenty (20) days of entry upon Plaintiff.
This constitutes the Decision and Order of the Court.
Date: January 15, 2026Hon. Lola WatermanCivil Court Judge (NYC)